UNITED STATES of America, Plaintiff,

v.

Alexander COOPER, et al., Defendants.

No. 89 CR 580.

United States District Court,
N.D. Illinois, E.D.

Sept. 25, 1990.

---

Stephen P. Sinnott, Asst. U.S. Atty., for plaintiff.

Jeffrey Urdangen, Cynthia Giacchetti, Chicago, Ill., for Federal Defender Program as amici curiae Carol A. Brook, Federal Defender Program, Chicago, Ill.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court has already appointed two lawyers rather than one to represent Anthony Davis ("Davis"), against whom the United States seeks the death penalty under 21 U.S.C. § 848(e)(1)(A)[1] and who is financially unable to pay for such legal representation himself. Defense counsel have moved under Section 848(q)(10) for an enhanced rate of compensation. Both the government and defense counsel have filed memoranda on that subject, and this Court has also been assisted by a memorandum from this District Court's Federal Defender Program, essentially serving as amici curiae.

Section 848(q)(10) calls for a departure from the normal bargain-basement rates set by the Criminal Justice Act ("CJA") to "such rate[] ... as the court determines to be reasonably necessary to carry out the requirements of [Section 848(q) ](4) through (9)." But the only requirements contained

---

1. All further citations to provisions of 21 U.S.C. § 848 will simply take the form "Section 848—."

in that set of subsections that are relevant to the current issue are these:

(5) If the appointment is made before judgment, at least one attorney so appointed must have been admitted to practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions in that court.

(7) With respect to paragraphs (5) and (6), the court, for good cause, may appoint another attorney whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation.

Those requirements do not really differ either in kind or in degree from the experience demanded for participation in this District Court's Federal Defender Program—a program for which highly competent lawyers in this District commendably volunteer despite the far-below-market rate of compensation provided for such services.[2] No real justification is suggested by the amici curiae for the $200 hourly rate they propose, except for this legitimate area of concern (Amici's Supp.Mem. 11–12):

3. The fee rate needs to be set at a rate which will allow the Federal Defender Program panel to attract sufficient persons of exceptional skill to be available to represent persons in future death penalty cases as well as death penalty habeas cases. It is because of these larger concerns about recruitment in future cases

that the Federal Defender Program has requested a rate above that requested by the individual lawyers in this case. There can be no question that lawyers in death penalty cases should be the most talented of lawyers. In addition, because of the strain caused by representing a defendant in a death penalty case, and because of the enormous amount of time such representation consumes, making it difficult to sustain a private practice, persons involved in one or two death penalty cases will not ordinarily be able to work on any future death penalty cases, for both emotional and financial reasons. Thus, to ensure the highest standard of representation in death penalty cases, the Federal Defender Program will need to be able to continuously attract high quality lawyers to its panel to do death penalty work. The same persons will not be available over and over. It also seems to us that once the first case has been resolved, it may become more difficult to find lawyers to work on later cases.

But that concern is both hypothetical and problematic. It is belied by the already-stated actual experience in federal defender cases generally, in which the quality of representation has not suffered in any respect from the inadequacy of the CJA rate of compensation when contrasted with current market rates.[3] If future experience were to suggest otherwise, it might perhaps be appropriate to take a fresh look at the question. For now, however, the arguments for a $200 rate are non-persuasive.[4]

---

2. To this Court's knowledge, participation in the Federal Defender Panel here has been much sought after among skilled practitioners. In a substantial number of multi-defendant criminal prosecutions tried by this Court, Panel attorneys have frequently rendered higher quality services and have frequently obtained better results than their privately-retained counterparts who represent co-defendants and who charge what the traffic will bear for such representation.

3. This Court is not of course insensitive to such considerations. Those who oppose increased federal judicial salaries make much the same point as has just been expressed in the text. But this opinion need not pause on the several non-parallel aspects of those two situations (CJA fees

and judicial salaries) where there are below-market levels of compensation—for even those who support increased judicial salaries for the many legitimate reasons that can be and are advanced in that respect must also recognize and deal with the force of the argument stated in the text.

4. This Court rejects out of hand the portion of amici curiae's argument in which they contend that lawyers are entitled to a kind of combat pay premium for "the strain caused by representing a defendant in a death penalty case." If a lawyer wishes that cup to pass from his or her lips for any such reason, that lawyer need not volunteer for the assignment—a luxury that is incidentally unavailable to the judge to whom

It is not suggested that if that rate were not paid Davis would not receive the quality representation to which he is entitled. Both his well-qualified appointed counsel are themselves suggesting a $150 hourly rate, which they label in their own September 10 supplemental memorandum as "an approximated median billing rate and not a premium rate or an attempt to receive more per hour than counsel would reasonably receive for privately retained legal services."

This Court has given serious consideration to a dual-rate arrangement, under which services of the type that would be rendered in all events in a *non*-capital case would be compensated at the regular CJA rate, while those that might be specially called for by the nature of the death-penalty proceeding would carry a premium. Amici curiae have interposed a series of objections to such an arrangement, both in practical terms and as a matter of principle. But that question need not be resolved here. However conceptually sound the dual-rate structure may be in light of the CJA itself and in light of the limited mandate of Section 848(q)(10), this Court has ultimately determined that such an arrangement would indeed create an extra and unnecessary layer of complexity in this case.

What this Court has instead concluded is that, taking all the relevant considerations into account, a uniform rate for all services at the highest level recommended by the Judicial Conference—$125 per hour—is approved for all services rendered to Davis (see VII *Guide to Judiciary Policies & Procedures: Appointment of Counsel in Criminal Cases* ¶ 6.02 B (Apr. 1990). This Court should also add that it expects to review the claims for reimbursement here just as it does all other multiple-lawyer requests for fees (for which purpose counsel may wish to locate prior opinions by

such a death-penalty case is assigned and who cannot in good conscience shirk the duty to take the case and, if it comes to that, to impose the ultimate penalty. Again the only relevant consideration under the statute is whether the en-

this Court dealing with the subject of fee awards).

tire congeries of factors that may affect the availability of counsel will, under the compensation rate set by the court, provide appointed counsel who will "carry out the requirements of [Section 848(q) ](4) through (9)."