UNITED STATES of America, Plaintiff,

v.

Raymond D. CHEELY, Jr., Douglas P. Gustafson, Peggy Gustafson–Barnett, and Craig A. Gustafson, Defendants.

No. A92–0073 Crim.

United States District Court, D. Alaska.

April 23, 1992.

Wevley Wm. Shea, Acting U.S. Atty., Mark H. Bonner, Dept. of Justice, Joseph W. Bottini, First Asst. U.S. Atty., Crandon

H. Randell, Asst. U.S. Atty., Anchorage, Alaska, for U.S.

Nancy Shaw, Federal Public Defender, Anchorage, Alaska, Richard Kammen, McClure, McClure & Kammen, Indianapolis, Ind., for Raymond D. Cheely, Jr.

Richard H. Friedman, Friedman & Rubin, James H. McComas, Schleuss & McComas, Anchorage, Alaska, for Douglas P. Gustafson.

Phillip Paul Weidner, Law Offices of Phillip Paul Weidner & Assoc., Inc., John M. Murtagh, Anchorage, Alaska, for Peggy Gustafson–Barnett.

## ORDER REGARDING APPOINTED COUNSEL

SINGLETON, District Judge.

The Court has received the motion of counsel for Douglas P. Gustafson "to affirm the status of defense counsel," at Docket No. 27 in A92–086 (MJ), dated April 7, 1992; the motion of counsel for Peggy Gustafson–Barnett "to affirm status of defense counsel/joinder in motion to confirm status of defense counsel," at Docket No. 33 in A92–086 (MJ), dated April 8, 1992; the government's "response to motion to affirm status of defense counsel" brought by Douglas P. Gustafson's counsel, at Docket No. 33 in A92–086 (MJ), dated April 9, 1992; the motion of defendant Raymond D. Cheely, Jr. that "Ray Cheely's lawyer(s) be fairly paid and that the scheduling of matters in this case respect the rights of counsel's other clients," at Docket No. 41 in A92–086 (MJ), dated April 9, 1992; the Report and Recommendation of Magistrate Judge Branson regarding the aforementioned motions, at Docket No. 45 in A92–086 (MJ), dated April 10, 1992; Douglas P. Gustafson's "response to recommendation/order re: court-appointed counsel and reply to government's response to motion to affirm status of defense counsel," at Docket No. 50 in A92–086 (MJ), dated April 13, 1992; and the United States' "response to Magistrate Judge Branson's 'report and recommendation' re appointed counsel," at Docket No. 51 in A92–086 (MJ), dated April 13, 1992.

Defense counsel anticipate the possibility of a long, arduous and complex case, and request that certain conditions be met with regard to the representation of their clients. Before the Magistrate Judge issued his report and recommendation, counsel for Douglas P. Gustafson requested:

1. That the $3,500.00 cap for felony cases be lifted;
2. That the appointment of two attorneys be allowed;
3. That they be allowed to bill (and receive payment) on a monthly basis;
4. That they be paid for each hour actually worked at the level provided for in the Ninth Circuit plan; and
5. That they not be required to "front" costs involved.

See Docket No. 27. Counsel for Peggy Gustafson–Barnett made requests only slightly different, specially requesting "[t]hat they not be required to 'advance' costs involved with regard to experts and investigation, etc." and also noting that "Mr. Weidner [one of Gustafson–Barnett's counsel] is under the impression certain of those provisions [of the Ninth Circuit plan] allow payment of $125.00 per hour as set out in said plan." See Docket No. 33. Peggy Gustafson–Barnett's counsel specifically requested that "the court set out a mechanism to allow pre-payment of appropriate investigative and expert witness costs in order to retain qualified investigators and experts to assist counsel in this matter."

Defendant Raymond D. Cheely, Jr. petitioned the court for the following relief with respect to Richard Kammen, the attorney who is co-counsel with Nancy Shaw, Federal Public Defender, in Cheely's defense:

a. That Richard Kammen be paid at the rate of $175.00 per hour including portal-to-portal for travel without limitation on the hours expended or the total fee.

b. That Richard Kammen be reimbursed pursuant to the Criminal Justice Act for travel and out of pocket expenses and paid the federal per diem for Anchorage for food and lodging.

c. That Richard Kammen be permitted to submit monthly billings and that those billings be promptly reviewed, approved, and paid.

d. That no major hearing be set in this cause without giving Richard Kammen adequate notice to arrange travel and minimize conflicts.

e. That the court enter such other orders as may, from time to time, be appropriate in this [sic] to effect the intent of the order.

*See* Docket No. 41. Counsel for Peggy Gustafson–Barnett and Douglas P. Gustafson supported their motions with affidavits representing that some sort of agreement on these accommodations is necessary to their continued representation of their clients.

The government filed a response to the motions of counsel for Peggy Gustafson–Barnett and Douglas P. Gustafson in which it urged the Magistrate Judge not to grant the defendants' counsel a "windfall." The government argued generally that the rate authorized by the Act would result in a generous payment to appointed counsel which would exceed the salaries of the public officials involved in the case, such as the Federal Public Defender or the Assistant United States Attorneys. The resultant wage, argued the government, would remove the representation from the class of *pro bono* assignments. The United States urged that the Court consider appointment under the Act to be a public service, for which a commensurate sacrifice in compensation would be appropriate. Finally, the government suggested that there were many other counsel in the District of Alaska who were able and eager to assume the representation, should present appointed counsel find it too damaging to the financial health of their practices. *See* Docket No. 37.

After considering the submissions discussed above, Magistrate Judge Branson issued a report and recommendation which recommended granting the defendants' requests in part and denying them in part. *See* Docket No. 45. He recommended that two counsel be appointed for each defendant, pursuant to 18 U.S.C. § 3005, which provides for two counsel in federal capital cases. Magistrate Judge Branson recommended a compensation rate of $125.00 per hour. He also recommended that the Court permit interim billing on a bimonthly basis to mitigate the harsh effect of the prohibition against advancing funds to counsel for services not yet rendered. His proposed order also established procedures for the preapproval of single-item expenditures over $800.00.

To this report and recommendation Douglas P. Gustafson objected insofar as it failed to provide for a rate of compensation which included a 25% adjustment reflecting the fact that the District of Alaska is a geographic high rate district. Douglas P. Gustafson requested that his attorneys be compensated at a rate of $160.00 per hour. *See* Docket No. 50. Douglas P. Gustafson also cautioned that "[i]f the conditions of compensation and reimbursement fall below those recommended by the Magistrate Judge, however, counsel will be unable to continue the representation." *See* Docket No. 50. Douglas P. Gustafson also objected to the submission by the United States Attorney of any response to a recommendation regarding arrangements which were, in his opinion, of concern only to the Court and defense counsel.[1] Douglas Gustafson also argued that his attorneys' acceptance of the appointment for his representation may have a negative rather than a positive effect on their practices, if media accounts of the unpopularity of the defendants are to be believed. Douglas Gustafson noted the disadvantages which may result from the representation of an unpopular cause, ranging from harassment in the form of prank phone calls to hesitancy

---

1. The Court believes that the United States Attorney may properly argue to the Court the proper interpretation of provisions of the United States Code, at least where the law concerns disbursement of government funds and the United States has an interest in protecting the public fisc. *Cf. United States v. Cooper,* 746 F.Supp. 1352, 1352 (N.D.Ill.1990) (Shadur, J.) (considering government memorandum on rate of compensation to be paid to appointed defense counsel).

from present and future clients to maintain or establish an attorney-client relationship. Douglas P. Gustafson also noted the risk to the established practices of his counsel if they are to give less attention to their other clients in order to devote their full attention and time to this representation. Finally, Douglas Gustafson noted that the government's supposition that appointed counsel will be more handsomely compensated for their work than will the public employees in this case did not take into account the overhead which appointed counsel must continue to bear even as they are required to devote less attention to the more remunerative aspects of their practices.

In response to the report and recommendation, the United States conceded that "[c]ertainly in this case the $3,500 cap [for felony prosecutions] should be removed." It reiterated its interpretation of the Act as a vehicle for *pro bono* efforts, but recognized that

[c]ertainly, the overriding factor when considering the rights of all the defendants charged in this case is that they be afforded 'justice' and have 'qualified' counsel. This is mandatory due to the seriousness of the grave acts the defendants' [sic] committed and the resulting consequences on their future.

This is a unique and unusual case for federal court in Alaska. The basic question regarding payment of fees to defense counsel must address the unique nature of the case and the overriding requirement that 'justice' is done.

*See* Docket No. 51. The government urged that "the Act has relied on the *pro bono* efforts of Alaska counsel for years. This case must not distort the past or future application of the Act in Alaska Federal Court." *See* Docket No. 51.

Defendants Peggy Gustafson–Barnett and Raymond D. Cheely filed no response to the Magistrate Judge's report and recommendation. After considering the parties' submissions, Magistrate Judge Branson declined to alter his report and recommendation. *See* Docket No. 7. It was then referred to the undersigned, the Judge to whom the criminal case is currently assigned.

## DISCUSSION

■ The United States' conservative interpretation of the requirements of the Criminal Justice Act might perhaps be appropriate to the typical federal criminal prosecution. This is not a typical federal criminal prosecution. The defendants have been charged with serious crimes in a ten count indictment returned by a grand jury on April 14, 1992.[2] These crimes include violation of 18 U.S.C. § 1716, 18 U.S.C. § 924(c)(1), 18 U.S.C. § 371, 18 U.S.C. § 844(d), 26 U.S.C. § 5861(d) and 26 U.S.C. § 5861(f).[3] Of these statutes, 18 U.S.C. § 844(d) and 18 U.S.C. § 1716 purport to authorize imposition of a sentence of death upon conviction.[4]

The Court has considered 18 U.S.C. § 3005 and 3006A, 21 U.S.C. § 848(q), the United States District Court for the District of Alaska *Plan for Implementing the Criminal Justice Act of 1964*, and the Ad-

---

2. All four defendants, including Craig A. Gustafson, who until April 18, 1992 was at large, have been charged in counts one through seven. Only defendants Raymond D. Cheely, Jr. and Douglas P. Gustafson have been charged in counts eight through ten.

3. Counts eight through ten allege violations of 18 U.S.C. § 842(i), 26 U.S.C. § 5861(d), and 26 U.S.C. § 5861(f), respectively.

4. The United States has not yet determined whether it will seek the death penalty, but has instructed defendants, their counsel, and the Court to proceed on the assumption that the death penalty may be sought. Magistrate Judge Branson has ordered simultaneous briefing on

the issue of the constitutionality of the death penalty provisions in these statutes. This briefing is to be filed on May 8, 1992, after which he will hold a hearing if necessary and issue a report and recommendation for this Court's consideration. *Cf. United States v. Cooper*, 754 F.Supp. 617, 620 (N.D.Ill.1990) (Shadur, J.) (defendant charged with capital crime entitled to early ruling on constitutionality of death penalty). The provisions of this order regarding appointed counsel will remain in effect for so long as the death penalty remains a possible sanction in the event of conviction. If that possibility is removed, this order may need to be modified and might be modified *sua sponte* by the Court.

ministrative Office for the United States Courts *Guidelines for the Administration of the Criminal Justice Act,* and has concluded that the appointment of two counsel in this case is appropriate, given the notice by the government that it may seek the death penalty. The appointment of counsel is to be governed by the procedures outlined in those authorities. In particular, the maximum amounts contemplated by 18 U.S.C. § 3006A are waived pursuant to 18 U.S.C. § 3006A(d)(3) and 21 U.S.C. § 848(q)(10). The Court finds and certifies that the exceedance of the $40.00 hourly limit by $85.00 is "necessary to provide fair compensation." 18 U.S.C. § 3006A(d)(3).[5]

The entitlement to counsel in death penalty cases provided for in 21 U.S.C. § 848(q)(5)–(10) is applicable to this case.[6] This is by virtue of the broadly inclusive language of 21 U.S.C. § 848(q)(4), which provides for counsel for indigent defendants "[n]otwithstanding *any other provision* to the contrary, in *every* criminal action in which a defendant is charged with a crime which may be punishable by death,...." *See* 21 U.S.C. § 848(q)(4) (emphasis added). That subsection provides, in pertinent part:

(4)(A) Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either—

(i) before judgment; or

(ii) after the entry of a judgment imposing a sentence of death but before the execution of that judgment; shall be entitled to the appointment of one or more attorneys and the furnishing

of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(B) In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(5) If the appointment is made before judgment, at least one attorney so appointed must have been admitted to practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions in that court.

(6) If the appointment is made after judgment, at least one attorney so appointed must have been admitted to practice in the court of appeals for not less than five years, and must have had not less than three years experience in the handling of appeals in that court in felony cases.

(7) With respect to paragraphs (5) and (6), the court, for good cause, may appoint another attorney whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation.

(8) Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every

---

**5.** The Court considers that the approval of the Chief Judge of the Circuit, contemplated by 18 U.S.C. § 3006A(e)(3), is not required. Under 21 U.S.C. § 848(q)(10), the Court is vested with discretion to waive the maximum hourly rates in the defense of certain federal capital crimes, upon a finding that such waiver is "reasonably necessary" to carry out the requirements of the subsection. *See Simmons v. Lockhart,* 931 F.2d 1226, 1232 (8th Cir.1991) (Arnold, J.) (approval of Chief Judge's designee under 18 U.S.C.

§ 3006A(e)(3) not necessary for fees under 21 U.S.C. § 848(q)(10) exceeding CJA maximums).

**6.** For the most part, the Court adopts the mechanics of the *Guidelines* for implementation of this entitlement. *Cf. In re Berger,* —— U.S. ——, 111 S.Ct. 628, 629, 112 L.Ed.2d 710 (1991) (*per curiam*) (endorsing *Guidelines* as interpretive aid).

subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications, [sic] for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

(9) Upon a finding in ex parte proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10). Upon a finding that timely procurement of such services could not practicably await prior authorization, the court may authorize the provision of and payment for such services nunc pro tunc.

(10) Notwithstanding the rates and maximum limits generally applicable to criminal cases and any other provision of law to the contrary, the court shall fix the compensation to be paid to attorneys appointed under this subsection and the fees and expenses to be paid for investigative, expert, and other reasonably necessary services authorized under paragraph (9), at such rates or amounts as the court determines to be reasonably necessary to carry out the requirements of paragraphs (4) though (9).

21 U.S.C. § 848(q)(4)–(10).

Because of the anticipated length of these proceedings and the anticipated hardship on counsel in undertaking representation full-time for such a period without compensation, pursuant to ¶ 2.30B of the *Guidelines for the Administration of the Criminal Justice Act,*[7] the Court will order that certain procedures and conditions be adopted with respect to the compensation of counsel appointed for defendants Douglas P. Gustafson, Peggy Gustafson–Barnett and Raymond D. Cheely, Jr.[8]

## PROCEDURES GOVERNING THE COMPENSATION OF APPOINTED COUNSEL

The following procedures for interim payments shall apply during the course of appointed counsel's representation in this case. The Court is unfortunately unable to satisfy counsel's request that they not be required to "front" costs. The *Guidelines* prohibit payment to appointed counsel for services not yet rendered. However, in order to mitigate the effects of this rule, the Court will permit bimonthly interim bills for services rendered.

### 1. Submission of Vouchers

■ Counsel shall submit to the Clerk of Court, twice each month, an interim CJA Form 20, "Appointment of and Authority to Pay Court Appointed Counsel." Compensation earned and reimbursable expenses incurred from the first to the fifteenth days of each month shall be claimed on an interim voucher submitted no later than the twentieth day of each month, or the first business day thereafter. Compensation earned and reimbursable expenses incurred from the sixteenth to the last day of each month shall be claimed on an interim voucher submitted no later than the fifth day of the following month, or the first business day thereafter. The first interim voucher submitted shall reflect all compensation claimed and reimbursable expenses incurred from the date of appointment to April 15, 1992, and shall be submitted no later than Tuesday, April 28, 1992; thereafter, the vouchers shall be submitted twice each month according to the schedule outlined above. Counsel shall strike the preprinted numbers on all but

---

**7.** These are found in *Guide to Judiciary Policies and Procedures,* Vol. VII (Appointment of Counsel in Criminal Cases) (1991).

**8.** The terms of this order shall also apply to counsel appointed to represent Craig A. Gustafson, if the Magistrate Judge finds that he is indigent and entitled to appointed counsel.

the first CJA Form 20 submitted and substitute the number appearing on the first voucher on all subsequent vouchers. Each voucher shall be numbered, in series, and include the time period each covers. Interim vouchers shall be submitted in accordance with this schedule even though little or no compensation or expenses are claimed for the respective period. All interim vouchers shall be supported by detailed and itemized time and expense statements. The applicable provisions of Chapter VI, as well as the applicable provisions of Chapter II, Part C of the *Guidelines for the Administration of the Criminal Justice Act*, outline the procedures and rules for claims by CJA attorneys and should be followed regarding each voucher.

The Magistrate Judge will review interim vouchers when submitted, particularly with regard to the amount of time claimed, and may authorize compensation to be paid for the approved number of hours. The Magistrate Judge may also authorize payment for all reimbursable expenses reasonably incurred. In making these determinations, the Magistrate Judge should bear in mind the complexity of the case, and the gravity of the sanction sought.

At the conclusion of the representation, each counsel shall submit a final voucher seeking payment for representation provided during the final interim period. The final voucher shall also set forth in detail the time and expenses claimed for the entire case, including all documentation. Counsel shall reflect all compensation and reimbursement previously received on the appropriate line of the final voucher.

### 2. *Reimbursable Expenses*

■ Counsel may be reimbursed for out-of-pocket expenses reasonably incurred incident to the representation. While the statute and applicable rules and regulations do not place a monetary limit on the amount of expenses that can be incurred, counsel should incur no single expense item in excess of $800.00, without prior approval of the Magistrate Judge.[9] Such approval may be sought by filing an *ex parte* application with the Clerk stating the nature of the expense, the estimated dollar cost and the reason the expense is necessary to the representation. An application seeking such approval may be filed *in camera*, if necessary. Upon finding that the expense is reasonable, the Magistrate Judge may authorize counsel to incur it.[10] Recurring expenses, such as telephone toll calls, photocopying and photographs, which aggregate more than $800.00 on one or more interim vouchers are not considered single expenses requiring prior approval.

With respect to travel outside of the greater Anchorage area[11] for the purpose of consulting with the client or his or her former counsel, interviewing witnesses, and other purposes incident to the representation, the $800.00 rule should be applied in the following manner. Travel expenses, such as air fare, mileage, parking fees, meals, and lodging, can be claimed as itemized expenses. Therefore, if the reimbursement for expenses relating to a single trip will aggregate an amount in excess of $800.00, the travel should receive prior approval of the Magistrate Judge.[12]

The following additional guidelines may be helpful to counsel:

a. Case-related travel by privately owned automobile should be claimed at the rate of 25 cents per mile, plus parking fees, ferry fares, and bridge, road and tunnel tolls. Transportation other than by privately owned automo-

---

9. If the financial position of counsel so requires, they may seek preauthorization of smaller amounts in order to obtain the Court's guarantee that the expense will later be reimbursed. However, advancement of funds will not be permitted.

10. Upon a finding that expenses reasonably incurred could not await prior authorization, the Magistrate Judge may approve such expenditures *nunc pro tunc.*

11. The Court considers the greater Anchorage area to extend from the Knik River to Girdwood.

12. Upon a finding that expenses reasonably incurred could not await prior authorization, the Magistrate Judge may approve such expenditures *nunc pro tunc.*

bile should be claimed on an actual expense basis. Air travel must be by the cheapest class available.

b. Actual expenses incurred for meals and lodging while traveling outside of the greater Anchorage area in the course of the representation must conform to the prevailing limitations placed upon travel and subsistence expenses of federal judiciary employees in accordance with existing government travel regulations. For specific details, counsel should consult the Clerk of Court.

c. Telephone toll calls, telegrams, photocopying, and photographs can all be reimbursable expenses if reasonably incurred. However, general office overhead, such as rent, secretarial help, and telephone service, is not a reimbursable expense, nor are items of a personal nature. In addition, expenses for service of subpoenas on fact witnesses are not reimbursable, but rather are governed by Federal Rule of Criminal Procedure 17 and 28 U.S.C. § 1825.

■ Defendant Cheely has requested, at Docket No. 41, that his attorney Richard Kammen be granted reimbursement for out-of-pocket expenses and be paid the federal per diem for Anchorage for food and lodging. The Court cannot grant this. The *Guidelines* provide:

Per diem in lieu of subsistence is not allowable, since the Act provides for reimbursement of expenses actually incurred. Therefore, counsel's expenses for meals and lodging incurred in the representation of the defendant would constitute reimbursable "out-of-pocket" expenses. In determining whether actual expenses incurred are "reasonable," counsel should be guided by the prevailing limitations placed upon travel and subsistence expenses of federal judiciary employees in accordance with existing government travel regulations.

*Guidelines*, ¶ 2.27B. The *Guidelines* do not address the propriety of reimbursing counsel normally resident outside of the district for travel expenses necessarily incurred in commuting to the place of prosecution.

Defendant Cheely suggests that Mr. Kammen's presence is necessary, inasmuch as he is the sole counsel, of the six who have been appointed, with substantial experience litigating capital cases.[13] While some state jurisdictions may have imposed this requirement, the Congress has not yet seen fit to require that one of a defendant's two attorneys in a capital case shall have had prior experience in capital criminal prosecutions. Rather, the only post-*Furman* death penalty statute to have been enacted by Congress merely requires experience in felony cases *simpliciter*. *Cf.* 21 U.S.C. § 848(q)(5)–(7), *supra*.[14] Despite these considerations, the Court considers it advisable that at least one attorney with substantial experience in capital litigation be appointed to assist in the defense of this capital case. For that reason, the Court agrees that Mr. Kammen's travel expenses from his residence to Anchorage for evidentiary hearings and trial are appropriately reimbursable under the Criminal Justice Act.[15] Mr. Kammen may participate in

---

**13.** The State of Alaska does not impose the death penalty as a sanction for any crime.

**14.** The Supreme Court has not concluded that counsel without prior experience in capital cases are *per se* ineffective. *Cf. Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (imposing requirement of demonstration of actual prejudice from inadequacy of counsel).

**15.** Mr. Kammen has also requested "that no major hearing be set in this cause without giving Richard Kammen adequate notice to arrange travel and minimize conflicts." In this as in all other litigation in this District, every at-

tempt will be made to accommodate counsel consistent with the needs of the Court. Magistrate Judge Branson has been careful to inquire of a defendant whether he or she has waived the presence of second counsel when it has been necessary for one of a defendant's two counsel to be absent. However, the Court has not determined that the absence from a proceeding of only one of defendant's two counsel necessarily constitutes a denial of the right to effective assistance of counsel. *Cf. Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

oral arguments by telephone, or travel to Anchorage at his own expense.

### 3. Rate of Compensation

 Counsel shall be compensated at the rate of $125.00 per hour for in-court and out-of-court time. This figure is the high end of the range indicated in the *Guidelines*. That range, from $75.00 to $125.00, affords judicial officers sufficient discretion to take into account factors such as higher costs in high cost districts. Were this prosecution defended in a locale with lower costs of living and overhead, a lower rate within that range might be appropriate. *But cf. United States v. Cooper,* 746 F.Supp. 1352, 1354 (N.D.Ill.1990) (Shadur, J.) (approving highest rate of $125 per hour for defense of federal capital prosecution in Northern District of Illinois). Mr. Kammen's request for his typical rate of $175.00 per hour is denied. If this makes it impossible for Mr. Kammen to continue to represent Mr. Cheely, he should file an application for withdrawal as soon as possible.

### 4. Investigative and Expert or Other Services

If counsel desire the use of investigative or expert services costing more than $800.00, they shall file an *ex parte* application with the Clerk stating the nature of the service, the estimated dollar cost and the reason the service is necessary to the representation. An application seeking such approval may be filed *in camera,* if necessary. Upon finding that the expense is reasonable, the Magistrate Judge may authorize counsel to incur it.[16]

### 5. Further Questions or Guidance Concerning Reimbursement of Expenses

Answers to questions concerning this appointment under the Criminal Justice Act can generally be found in 18 U.S.C. §§ 3005 and 3006A, 21 U.S.C. § 848(q)(4)–(10), the United States District Court for the District of Alaska *Plan for Implementing the Criminal Justice Act of 1964,* which may be obtained from the Clerk of Court, and the above-mentioned *Guidelines for the Administration of the Criminal Justice Act,* published by the Administrative Office of the United States Courts, and also available through the Clerk of Court. Should these references fail to provide the desired clarification, counsel should file an appropriate application with the Court pursuant to Local General Rule 5.

IT IS THEREFORE ORDERED:

That counsel's appointment, payment, and reimbursement be pursuant to the above procedures and conditions.

---

**16.** Upon a finding that expenses reasonably incurred could not await prior authorization, the Magistrate Judge may approve such expenditures *nunc pro tunc.* If the financial position of counsel so requires, they may seek preauthorization of smaller amounts in order to obtain the Court's guarantee that the expense will later be reimbursed. However, advancement of funds will not be permitted.