David FIERRO, et al., Plaintiffs,

v.

James GOMEZ, et al., Defendants.

No. C–92–1482 MHP.

United States District Court,
N.D. California.

April 24, 1992.

Michael Laurence and Matthew A. Coles, American Civ. Liberties Union, Foundation of Northern California, Inc., San Francisco, Cal., for plaintiffs.

Daniel E. Lungren, Atty. Gen. of the State of Cal., George Williamson, Chief Asst. Atty. Gen., Dane R. Gillette, Atty. of Record, Ronald S. Matthias, Karl S. Mayer, Paul D. Gifford, and Peter J. Siggins, Deputy Attys. Gen., San Francisco, Cal., for defendants.

## ADDENDUM TO MEMORANDUM AND ORDER

PATEL, District Judge.

Subsequent to the filing of this court's memorandum and order of April 18, 1992, a three-judge panel of the Ninth Circuit vacated the temporary restraining order issued in the above memorandum. See Appendix A. Judge Noonan dissented. See Appendix B. Pursuant to the Ninth Circuit's direction this court vacated the temporary restraining order. See Appendix C. One day after the execution of Robert Harris on April 21, 1992, Judges Alarcon and Brunetti recalled and vacated their writ of mandamus, and withdrew their opinion vacating this court's temporary restraining order. See Appendix D.

Accordingly, the defendants shall file their answer to plaintiffs' complaint within twenty (20) days of the date of this order and this matter will be set down for a hearing on the preliminary injunction at a time to be agreed upon by the parties. The hearing date of April 28, 1992 is vacated as there is no immediacy for the hearing or reason why the temporary restraining order should not expire on April 28, 1992.

IT IS SO ORDERED.

## APPENDIX A

FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAMES GOMEZ and DANIEL VASQUEZ

Petitioners

vs.

THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

Respondent

DAVID FIERRO, ROBERT HARRIS, and

ALEJANDRO GILBERT RUIZ

Real Parties in Interest

No. 92–70237 [Related to N.D.Cal. No. C–92–1482–MHP]

On Emergency Petition for Writ of Mandamus

Argued and submitted April 19, 1992, San Francisco, California

Filed April 20, 1992.

Opinion by Judge Alarcon

Before: ALARCON, BRUNETTI, and NOONAN, Circuit Judges.

ALARCON, Circuit Judge.

## OPINION

On Friday, April 17, 1992, Robert Alton Harris, and two other condemned prisoners, filed two actions seeking to halt his execution scheduled for April 21, 1992. In this matter, Harris filed a civil rights action pursuant to Section 1983. He seeks a permanent injunction banning the use of lethal gas in the execution of a judgment by death. On the same date, Harris filed a petition for a writ of habeas corpus in the Supreme Court of California. In his habeas corpus action he asked the California Supreme Court to issue a stay of execution. Harris did not claim in his petition before the California Supreme Court that the use

of lethal gas, in the execution of a judgment imposing the death penalty, violated the federal constitution. Since he was sentenced to death on March 6, 1979, Harris has filed five petitions for a writ of habeas corpus in the California Supreme Court. In none of them has he challenged the use of lethal gas to execute the trial court's judgment.

On March 13, 1992, counsel for Harris appeared before the Superior Court of the State of California for the County of San Diego. On that date, the court issued an order that Robert Alton Harris should suffer the death penalty on April 21, 1992. No motion was made before the state trial court to prevent the Warden of the State Prison of the State of California, at San Quentin Prison from executing the judgment of the court by lethal gas. As noted above, no review has been sought before the California Supreme Court of the March 13, 1992, order that the warden "carry into effect the judgment of the court by putting to death the said Robert Alton Harris *in the manner and means prescribed by law* on the twenty-first day of April, 1992." (Emphasis added.)

On Saturday evening, April 18, 1992, the district court issued a temporary restraining order enjoining James Gomez, the Director of the California Department of Corrections, and Daniel Vasquez, the Warden of the San Quentin Prison "from inflicting the punishment of death upon Plaintiffs or any class member by administration of lethal gas."

Petitioners, James Gomez and Daniel Vasquez (hereinafter the "State"), seek an emergency writ of mandamus to the United States District Court for the Northern District of California. Petitioners request this court to vacate a Temporary Restraining Order issued on April 18, 1992, in the case of *Fierro v. Gomez*, 790 F.Supp. 966 (N.D.Cal.1992). The State contends that the district court lacked the jurisdiction to enjoin the execution of the state court's judgment under the principles of federalism and comity first announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We agree and grant the petition for a writ of mandamus, and vacate the temporary restraining order forthwith.

## I.

Mandamus is an extraordinary remedy that may be used to challenge an otherwise unappealable order if the district court's exercise of jurisdiction "was clearly erroneous as a matter of law." *See Bauman v. United States*, 557 F.2d 650, 654–55 (9th Cir.1977). The State argues that the district court was required to dismiss the action under *Younger v. Harris*. In *Younger v. Harris*, the court held that federal courts "cannot interfere with state prosecutions." *Id.* 401 U.S. at 44, 91 S.Ct. at 751, 27 L.Ed.2d at 675. The basis for the Younger Abstention Doctrine is contained in the following passage:

This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights

and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

*Id.* 401 U.S. at 44, 91 S.Ct. at 751, 27 L.Ed.2d at 675.

In *Younger v. Harris,* the plaintiff sought to restrain a pending state criminal prosecution. *Id.* 401 U.S. at 41, 91 S.Ct. at 749, 27 L.Ed.2d at 674. In *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the plaintiff in a civil rights action argued, *inter alia,* that the Younger Abstention Doctrine was inapplicable where the state proceedings are no longer pending. *Id.* 420 U.S. at 607, 95 S.Ct. at 1209, 43 L.Ed.2d at 494. In *Huffman v. Pursue,* no appeal was taken from the state court's judgment.

The appellee in *Huffman v. Pursue* argued that *"Younger* ... does not govern this case because at the time the District Court acted there was no longer a pending state court proceeding." *Id.* 420 U.S. at 607, 95 S.Ct. at 1209, 43 L.Ed.2d at 494. The Court rejected this argument stating:

> [W]e believe a necessary concomitant of *Younger* is that a party in appellee's position must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in *Younger.*

*Id.* 420 U.S. at 607–08, 95 S.Ct. at 1209–10, 43 L.Ed.2d at 494–95.

As discussed above, Harris has failed to exhaust his state appellate remedies concerning the means of executing the trial court's judgment. He has had access to the Supreme Court of California on his direct appeal, and on five successive state habeas corpus petitions. Had he raised this issue in state court, the decision of the Supreme Court of California on his federal constitutional claim could have been re-viewed by the United States Supreme Court.

By failing to include this claim in the state habeas corpus proceedings, filed on the same date this civil rights action was filed in federal court, Harris has deliberately bypassed state review of his claim that execution by the injection of lethal gas is cruel and unusual punishment. This tactic is clearly violative of this nation's policy that as a matter of comity and federalism, federal courts should not intervene in state court proceedings nor assume that state court judges will deny litigants their federal constitutional rights.

In *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the appellant argued that no state court could hear his claims. *Id.* 481 U.S. at 14, 107 S.Ct. at 1527, 95 L.Ed.2d at 17. The Court responded to this argument as follows:

> But the burden on this point rests on the federal plaintiff to show "that state procedural law barred presentation of [its] claims." *Moore v. Sims,* 442 U.S. [415], at 432 [99 S.Ct. 2371 at 2381–82, 60 L.Ed.2d 994 (1979) ]. See *Younger v. Harris,* 401 U.S., at 45 [91 S.Ct. at 751] (" 'The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection' ") (quoting *Fenner v. Boykin,* 271 U.S. 240, 244, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)).

*Id.* 481 U.S. at 14–15, 107 S.Ct. at 1527–28, 95 L.Ed.2d at 17–18.

In a later passage the Court commented as follows:

> [W]hen a litigant has not attempted to present his federal claims in related state court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

*Id.* 481 U.S. at 15, 107 S.Ct. at 1528, 95 L.Ed.2d at 18.

As in *Pennzoil Co. v. Texaco, Inc.,* in this matter, Harris did *not* attempt to present his federal claims in the state habeas corpus proceedings he filed in the Su-

preme Court of California simultaneously with the filing of this section 1983 action. Under the Younger Abstention Doctrine, we must assume that the state habeas corpus procedures would have afforded Harris an adequate remedy. The Court concluded its analysis of the applicability of the Younger Abstention Doctrine in *Pennzoil Co. v. Texaco, Inc.* with the following comment:

> Because Texaco apparently did not give the Texas courts an opportunity to adjudicate its constitutional claims, and because Texaco cannot demonstrate that the Texas courts were not then open to adjudicate its claims, there is no basis for concluding that the Texas law and procedures were so deficient that *Younger* abstention is inappropriate. Accordingly, we conclude that the District Court should have abstained.

*Id.* 481 U.S. at 17, 107 S.Ct. at 1529, 95 L.Ed.2d at 19.

Here, Harris has not given the California courts an opportunity to adjudicate his claim that the injection of lethal gas, in carrying out a sentence of death, violates the federal constitution. The district court was required to abstain. The district court clearly erred as a matter of law in granting a temporary restraining order in this matter.

### III.

The April 18, 1992, order from the district court restraining and enjoining James Gomez and Daniel Vasquez from inflicting the punishment of death by the administration of lethal gas upon Robert Alton Harris, David Fierro, Albert Gilbert Ruiz, and any members of the purported class is VACATED. The mandate shall issue forthwith.

Judge Noonan dissents. He has indicated he will file a separate expression of his views.

### COUNSEL

Dane R. Gillette, Esq., and Louis R. Hanouin, Esq., Deputies Attorneys General, State of California, San Francisco, California, for Petitioners.

Michael Laurence, Esq., American Civil Liberties Union Foundation of Northern California, San Francisco, California, for Real Parties in Interest.

### APPENDIX B

*Gomez and Vasquez v. Fierro, Harris, et al.*, No. 92–70237

Filed April 20, 1992

NOONAN, Circuit Judge, dissenting:

As the well-known dictum of Justice Holmes has put it, great cases generate hydraulic pressures. It is clear that in this case and in the related proceedings involving Robert Harris a sense of urgency has pervaded the litigation. Such urgency is understandable on the part of counsel for the state who are charged with making sure that Harris is executed; it is evident what they believe their primary duty to be. Such urgency, however, cannot be the priority of this court, whose task is to enforce the Constitution of the United States while observing the rules by which the federal judicial system functions and the rules by which we as a court are organized.

The issuance of a writ of mandamus by a two-to-one vote of the panel in this case at a late hour Sunday evening, April 19, 1992 raises a serious question as to compliance with our rules, appears to break with settled precedent as to the issuance of writs of mandamus, and makes likely an irreparable violation of the Constitution of the United States.

In haste, the court's order of mandamus was announced at approximately 11 P.M. on Sunday evening. The writ itself was transmitted by FAX to the district court at 11:23 A.M. Monday morning. The opinion supporting the writ was not produced until after 3 P.M. on Monday. Until the opinion was produced the order constituted "a mandamus from the blue without rationale." *See Will v. United States*, 389 U.S.

90, 107, 88 S.Ct. 269, 279, 19 L.Ed.2d 305 (1967). Such a mandamus from the blue is "tantamount to an abdication of the ... functions of an appellate court." *Id.* 389 U.S. at 107, 88 S.Ct. at 279. It is a fair question whether the reasons now given provide the missing rationale.

1. *The jurisdiction of the panel.* A serious question exists as to whether the panel to which the Robert Harris case had been confided had jurisdiction to issue mandamus in this case. Circuit Rule 22–1 specifies:

**Rule 22–1  Scope of These Rules**

The following rules apply to all proceedings within the jurisdiction of this court in cases brought pursuant to 28 U.S.C. § 2254 involving a sentence of death, including appeals from orders of United States District Courts granting or denying habeas corpus relief, motions for stays of execution, or applications for certificates of probable cause. To the extent that other Circuit Rules are inconsistent with these rules, these rules apply.

**Rule 22–2  Habeas Corpus Death Penalty Panel**

... The panel to which the case is assigned shall handle all matters pertaining to the case, including motions for a stay of execution, applications for certificate of probable cause, the merits, appeals from second or successive petitions, remands from the Supreme Court of the United States, and all incidental and collateral matters, including any separate proceedings questioning the conviction or sentence.

The instant case, *Gomez and Vasquez v. U.S.D.C.,* was not brought pursuant to 28 U.S.C. § 2254. It is certainly arguable whether it is a "collateral matter" which "questions the sentence." Since authority of such moment has been assumed by the Harris panel, it is desirable for the full court to determine whether the Harris panel had jurisdiction.

On the assumption that the Harris panel did have jurisdiction, it seems apparent that the other rules governing "habeas corpus death penalty cases" should also apply, even though it is awkward to fit all of them within the framework of a civil rights case. In particular it is possible for a single judge to issue a stay of execution under Circuit Rule 22–5(e)(4).

2. *The Obligation of the District Court.* The opinion of the panel granting mandamus takes the position that the district court was clearly erroneous in exercising jurisdiction. This opinion takes no account of the general rule that a federal court has a "virtually unflagging" obligation to adjudicate claims within its jurisdiction, *Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988) and that not to do so "would be treason to the Constitution." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (per Marshall, C.J.). An exception to the general rule is an exception, not the rule. *New Orleans Public Serv. v. Council of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989). The panel has made an unprecedented extension of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) in order to justify its extraordinary action and create an exception to what would otherwise be "treason to the Constitution." The panel has violated our rules governing the issue of mandamus, *Bauman v. United States,* 557 F.2d 650, 654–55 (9th Cir.1977).

3. *Disregard Of Precedent Re Mandamus.* The *Bauman* factors governing mandamus are well-established, 557 F.2d 650, 654 (1977). The central question is "whether the district court's order is clearly erroneous as a matter of law." Judge Patel, in the exercise of her discretion to issue a temporary restraining order, had to answer two questions: Were there serious questions presented? Did the balance of hardships tip in favor of the party seeking the order?

To answer the second question first, it is evident that the state has an interest in the orderly carrying out of an execution and suffers an inconvenience in its postponement. At the same time the injury is more psychological and intangible than substantial. The state will get its man in the end. In contrast, if persons are put to death in a manner that is determined to be cruel, they suffer injury that can never be undone, and the Constitution suffers an injury that can never be repaired. The balance of hardships clearly tips in favor of the restraining order.

The serious questions presented to Judge Patel were three:

1. Do *Younger v. Harris,* 401 U.S. 37, 45, 91 S.Ct. 746, 751, and its progeny require the federal court to abstain from intervening to prevent the execution of a state judgment?

The answer to this question is disputed by the parties. Although *Younger* itself dealt only with a pending criminal prosecution, it is argued that the doctrine has been extended so that a federal court should not prevent the carrying out of a state judgment. *Pennzoil v. Texaco,* 481 U.S. 1, 17, 107 S.Ct. 1519, 1529, 95 L.Ed.2d 1 (1987). On the other hand, it is argued that *Younger* abstention has no place in this kind of case. *Younger* itself applies where the constitutional defense could be raised during the ongoing state proceeding. *Almodovar v. Reiner,* 832 F.2d 1138, 1141–42 (9th Cir.1987). *Pennzoil* explicitly applies to a case where the state judicial process is still going on—in that case where an appeal to the state appellate court was pending. *Pennzoil,* 481 U.S. 1 at 15, n. 14, 107 S.Ct. 1519 at 1528 n. 14 ("So long as these challenges relate to pending state proceedings, proper respect for the ability of the state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Id.* at 14, 107 S.Ct. at 1527).

Taken at its word, the panel's reading of *Younger,* interpreting judicial proceedings to last through execution, precludes all habeas corpus petitions by death penalty inmates. From the beginning of the prosecution until the moment of death there is no time that *Younger* would permit a habeas petition.

2. Should the section 1983 action, so far as it affected Robert Harris, be construed as an impermissible evasion of the ordinary requirements for habeas corpus?

In a sense this question is a recasting of the first question but focuses directly on the impact of a TRO on Harris' execution. The State urged that, looking at the realities of the matter, this case was brought only to prevent Harris' execution. In opposition, the plaintiffs asserted that they represented a large group of persons who would be subjected to death by lethal gas and that Harris was one of this number. It would surely be anomalous for the class to have a good cause of action and to have one member of it denied the benefit of the action because relief would come too late in the absence of the restraining order. It was a serious question whether such an anomaly should be permitted.

The general rule is clear that a section 1983 claim cannot be blocked by imposing the exhaustion of state remedy requirement that would be appropriate to habeas relief. *Ellis v. Dyson,* 421 U.S. 426, 432–33, 95 S.Ct. 1691, 1694–1695, 44 L.Ed.2d 274 (1975); *Young v. Kenny,* 907 F.2d 874, 875 (9th Cir.1990). The panel's opinion seems not to acknowledge this rule. Consequently, the panel seems unaware of the serious question that the district court would have to decide if it were to turn this section 1983 action into a habeas petition for Harris and bar it for lack of exhaustion. *Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971), *Preiser v. Rodriguez,* 411 U.S. 475, 482, 93 S.Ct. 1827, 1832, 36 L.Ed.2d 439 (1973).

Finally, in suggesting that Harris's Eighth Amendment claim regarding the mode of his execution is only cognizable

under habeas corpus, the panel creates a circuit split. No other circuit has so held. Both the Fifth and Eleventh Circuit have considered challenges to the manner of execution as properly raised under section 1983. *Sullivan v. Dugger*, 721 F.2d 719 (11th Cir.1983), *Byrne v. Roemer*, 847 F.2d 1130 (5th Cir.1988).

3. Is it cruel and unusual punishment to inflict death by lethal gas? In determining whether this is a serious question the court was governed by the following precedents:

(a) As to what constitutes cruel and unusual punishment, it was long ago decided that the standard is not set by what the prevailing norm was in 1789, but rather by an evolving adaptation to new evils. *Weems v. United States*, 217 U.S. 349, 373, 30 S.Ct. 544, 551, 54 L.Ed. 793 (1910). The standard *Weems* approved has been repeatedly invoked to permit the application of "evolving standards of decency," *e.g.*, *Stanford v. Kentucky*, 492 U.S. 361, 369, 109 S.Ct. 2969, 2974, 106 L.Ed.2d 306 (1989), *quoting Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion).

In determining what is the current standard of human decency in these matters, the indicia should be objective, and the best index is the practice of the state legislatures. *Stanford*, 492 U.S. at 370–371, 109 S.Ct. at 2975–2976.

Only three states now authorize death only by means of lethal gas. One of these states, Maryland, has not had an execution since 1961. The second state, Arizona, had such an execution this month, and it was reported to the district court that, in reaction to it, the state legislature was taking steps to change the method of execution. The third state is California, whose statute is in question in this case. Eight states in the last 15 years have abolished execution by lethal gas. A serious question exists as to whether there is not sufficient consensus to establish that its use is cruel and unusual punishment.

(b) The constitutional standard is that any unnecessary suffering caused in the infliction of the death penalty is cruel and unusual. *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947). The district court was presented with substantial medical evidence in the form of declarations that such unnecessary suffering was inflicted. The State did not choose to respond to this evidence. Clearly a serious question was presented as to whether unnecessary suffering was inflicted.

I respectfully dissent.

### APPENDIX C

### UNITED STATES DISTRICT COURT

#### NORTHERN DISTRICT
#### OF CALIFORNIA

DAVID FIERRO, et al.,

Plaintiff,

-vs.-

JAMES GOMEZ, et al.,

Defendants.

NO. C–92–1482 MHP

**ORDER**

The order of the Ninth Circuit Court of Appeals having issued an order directing this court to vacate the temporary restraining order issued April 18, 1992,

IT IS THEREFORE ORDERED that the temporary restraining order issued by this court on April 18, 1991, be and is hereby vacated.

IT IS SO ORDERED.

DATED: APR 20 1992

/s/   Marilyn Hall Patel

MARILYN HALL PATEL

United States District Judge

APPENDIX D

FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAMES GOMEZ and DANIEL VASQUEZ,

Petitioners.

v.

THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

Respondent

DAVID FIERRO, ROBERT HARRIS, and ALEJANDRO CILBERT RUIZ,

Real Parties In Interest

No. 92–70237 [Related to N.D.Cal. No. C–92–1482–MHP]

ORDER

Filed April 22, 1992

Before: ALARCON and BRUNETTI, Circuit Judges.

The issues raised in this petition for a writ of mandamus concerning the validity of the temporary restraining order have become moot by subsequent events. The temporary restraining order will expire *ex propria* vigore on April 28, 1992. No executions are scheduled in the State of California prior to that date.

Accordingly, the order issuing the writ of mandamus is RECALLED and VACATED. The opinion filed on April 20, 1992 is WITHDRAWN. The petition for a writ of mandamus is DISMISSED as moot.